IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



GENERAL MOTORS LLC,

    Plaintiffs,

v.                                                 CIVIL NO. 2:15cv301

HALL CHEVROLET, LLC,

    Defendant.

**OPINION AND ORDER**

This matter comes before the Court on Hall Chevrolet's Motion to Dismiss in Favor of an Alternative Forum and General Motors' ("GM") Motion to Compel Arbitration. ECF No. 25, ECF No. 40.

**I.    PROCEDURAL HISTORY**

On July 9, 2015, the GM filed a Complaint against Hall Chevrolet for two counts of breach of contract. According to the GM, the Hall Chevrolet breached their Exclusive Use Agreement (Count I) and Dealer Agreement (Count II) with the GM by adding a Chrysler, Dodge, Jeep, and Ram ("CDJR") operation to its premises. ECF No. 1.

On July 23, 2015, Hall Chevrolet filed a Motion to Dismiss in Favor of an Alternative Forum. ECF No. 25. In its motion, Hall Chevrolet asks the Court to abstain or suspend jurisdiction in favor of proceedings before the Virginia DMV.[1] Id. On August 3, 2015, GM filed

---

[1] Hall Chevrolet filed a Petition with the Virginia DMV on July 23, 2015, asserting that GM violated its statutory rights under the Virginia Dealer Act.

an Opposition to Hall Chevrolet's Motion to Dismiss. ECF No. 39. On August 10, 2015, Hall Chevrolet filed a Reply to GM's Opposition. ECF No. 43.

On August 3, 2015, the GM filed a Cross Motion to Compel Arbitration and Stay Proceedings. ECF No. 40. On August 17, 2015, the Hall Chevrolet filed an Opposition to the GM's Motion to Compel Arbitration. ECF No. 44. On August 24, 2015, the GM filed a Reply to the Hall Chevrolet's Opposition. ECF No. 46.

A hearing was held September 17, 2015 at which arguments were heard on all pending motions, but the Court did not reach the issue of whether the court must compel arbitration of the Exclusive Use Agreement. On September 29, 2015, this Court issued an order requesting briefing and a hearing on the issue of compelled arbitration of the exclusive use agreement. ECF No. 63. GM and Hall Chevrolet each submitted memorandum on the subject on October 7, 2015. ECF No. 64, ECF No. 65. A hearing was held October 22, 2015 at which parties argued the issue.

## II. STATEMENT OF FACTS

Hall Chevrolet is the current Chevrolet dealer operating upon a piece of property that has been a Chevrolet dealership for many years. Hall Chevrolet has a contract to operate the sale of vehicles with GM (the Dealer Agreement). Hall Chevrolet also has a contract it has assumed from the purchase of previous dealerships (the Exclusive Use Agreement) which the prior dealer had with GM.

In or around May 1999, GM entered into a Business Plan and Exclusive Use Agreement with Freedom Chevrolet-Nissan ("Freedom Chevrolet"), which operated a Chevrolet dealership at the location that is now the premises occupied by Hall Chevrolet (the "Premises"). Compl. ¶ 17. The Exclusive Use Agreement provided in return for the payment of a substantial sum of money as follows:

> Dealer hereby agrees that, at all times during the Exclusivity Period, it shall actively and continuously conduct Dealership Operations for the Existing Model Line at the Property in accordance with the terms of the Dealer Agreement. The Property may not be used for any purpose other than the Dealership Operations for the Existing Model Line (which prohibited uses include but are not limited to, the sale, display storage, and/or service of motor vehicles not covered by the Dealer Agreement other than as specifically contemplated by the term "Dealership Operations" in the Dealer Agreement), during the Exclusivity Period without the Prior written consent of GM, which consent may be granted or withheld in GM's sole discretion; provided, however, that the Dealer shall be entitled, pursuant to the Business Plan Agreement to operate its Non-GM Sales Operations at the Property for a period not to exceed ninety (90) days after the date hereof and its Non-GM Service/Parts Operation for a period not to exceed twelve (12) months after the Date hereof.

Compl. Ex. D at 6. Additionally, the Exclusive Use Agreement included the following regarding payment for the contract by GM: "Within ten (10) business days after the Effective Date, GM shall deliver to the Dealer the sum [ ](the 'Payment') (It was a substantial sum). Dealer hereby acknowledges and agrees that the Payment is fair and adequate consideration for Dealer's execution of and performance under this Agreement." Id. at 3. Also, the Exclusive Use Agreement stated the Property should be used exclusively as a Chevrolet dealership for a term of years. Id. at 3.

The Exclusive Use Agreement contains an arbitration clause. Compl. Ex. 3 at 5. Specifically the clause provides, "[s]ubject to the following provisions of this section, GM and Dealer agree to submit to final and binding arbitration, upon either party's written notice, any and all claims, disputes, and controversies between them arising under or relating to this Agreement and its negotiation, execution, administration, modification, extension or enforcement." Id. This section of the Exclusive Use Agreement also provides that the arbitration process "shall be the exclusive mechanism for resolving any Claims." Id. The substantial sum of money paid by GM has not been proffered by Hall Chevrolet back to GM.

3

In April 2001, Tidewater PE Imports ("Tidewater") assumed the rights and obligations contained in the Summary Agreement and Exclusive Use Agreement from Freedom Chevrolet. Compl. ¶19. It continued exclusive Chevrolet operations on the Premises. Id.

In October 2005, Hall Chevrolet entered into an Asset Purchase Agreement with Tidewater to purchase the assets used in connection with the Chevrolet operations on the Premises. Id. ¶ 20. Pursuant to this agreement, Hall Chevrolet assumed the contractual obligations contained in the Summary Agreement and Exclusive Use Agreement. Id. ¶ 21. In April 2006, this assumption was memorialized in an Assignment Agreement, in which the parties agreed that the assignment "shall run or the benefit of and be fully enforceable by GM." Id. ¶ 21–22.

In October 2010, GM and Hall Chevrolet entered into the most recent Dealer Agreement. Id. ¶ 11. The Premises Addendum to the 2010 Dealer Agreement provides that the buildings and the lot will be devoted to GM use, and that no changes in location in the use of the Premises shall be made without GM's prior written authorization. Id. ¶ 15.

### III. STANDARD OF REVIEW

In the Fourth Circuit, to determine whether a suit should be arbitrated, the Court asks two questions: "(1) did the parties have a valid agreement to arbitrate? If so, (2) does the arbitration agreement apply to the dispute at hand?" General Elec. Capital Corp. v. Union Corp Financial Group Inc., 142 Fed. App'x. 150, 152 (4th Cir. 2005). The Federal Arbitration Act requires that arbitration agreements be broadly interpreted and widely honored. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627 (1985).

It is clear from the Exclusive Use Agreement, that the parties had a valid agreement to arbitrate, however, the enforceability of the arbitration clause is the question before the Court. Under federal law, motor vehicle franchise contracts are subject to the Motor Vehicle Franchise

Contract Arbitration Fairness Act ("MVFCAFA"), which negates pre-dispute arbitration agreements in motor vehicle franchise contracts unless written consent is given at the time of the dispute. 15 U.S.C. § 1226. There is no dispute that the Dealer Agreement constitutes a motor vehicle franchise contract, and the Court has previously issued an order declaring this fact. ECF No. 63. However, the question before the Court remains as to whether the independent Exclusive Use Agreement constitutes a motor vehicle franchise contract subject to the written consent requirement of the MVFCAFA, if not, must the Court compel arbitration of the Exclusive Use Agreement?

### IV. ARBITRATION OF THE EXCLUSIVE USE AGREEMENT

The current formation of the agreements has placed the Court between a rock and a hard place—or at least between strong federal policies to enforce arbitration agreements and deference to state contract construction. On one hand, where an enforceable arbitration agreement exists this Court does not have jurisdiction to hear the claims, as these must be submitted to an arbitrator. On the other, Virginia law may call for the interpretation of the separate agreements as part and parcel of one integrated contract which would nullify the enforceability of the arbitration clause in the Exclusive Use Agreement. Congress and the Supreme Court have made clear that it is the policy of the federal government to enforce arbitration clauses wherever possible pursuant to the Federal Arbitration Act. As such, "[a] district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002). This preference for enforcement is so strong that according to the Supreme Court, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

Congress can expressly exempt some contracts from enforcement of the arbitration clause. Exemptions of this type are limited, and the Supreme Court has made clear that, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). There was such an intention to preclude waiver of judicial remedies in the MVFCAFA, which stated:

> Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.

15 U.S.C. § 1226(a)(2). The explicit intention to avoid arbitration of motor vehicle franchise contracts by Congress limited the safe haven to only those contracts that fit within a narrow statutory definition of motor vehicle franchise contracts. Id. According to the MVFCAFA, a motor vehicle franchise contract is "a contract under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles." 15 U.S.C. § 1226(a)(1)(B). As such, only those contracts fitting within the narrow definition must have consent of both parties at the time of the dispute in order to enforce an arbitration provision. This Court has already determined that the Dealer Agreement does fit the MVFCAFA's definition of motor vehicle franchise contract, but has not previously issued a finding on whether the Exclusive Use Agreement is a motor vehicle franchise contract. ECF No. 63.

Persuasive authority from the Second Circuit provides that where a contract relates to a motor vehicle franchise contract, the MVFCAFA does not apply so long as the contract in question does not independently meet the definition of a motor vehicle franchise contract. Ariniaga v. General Motors Corp., 460 F.3d 231, 235 (2d Cir. 2006) (finding that the MVFCAFA "does not affect arbitration agreements in other types of contracts, even if they touch on the relationship between an automobile manufacturer and a car dealership"). Other Courts have also found that contracts concerning relations between motor vehicle dealers and automobile manufacturers are not necessarily motor vehicle franchise contracts under the MVFCAFA. See Pride v. Ford Motor Co., 341 F. Supp. 2d 617, 621 (N.D. Miss. 2004) (where the Court held that the MVFCAFA did not apply to a related employment and investment contract of the dealer because, "Agreement at issue here is not a contract under which [the manufacturer] sold motor vehicles to the Plaintiff for resale, nor did the Agreement authorize the Plaintiff to repair or service Ford's motor vehicles."); Brown Pontiac-Olds, Inc. v. Gen. Motors Corp., 2006 WL 318827, at *4 (D. Me. Feb. 9, 2006) (In which the court compelled arbitration on all claims because the Agreement and Business Plan were not non-negotiated side contracts to the motor vehicle franchise contract.); Today Chevrolet, In. v. General Motors Corp., No. C02-5642FDB, slip op., (W.D. Wash. May 12, 2006) at 5-6 (where the court held an exclusive use agreement and relocation agreement were, "not contracts under which [manufacturer] sells motor vehicles to [dealer] for resale to an ultimate purchaser and authorizes [dealer] to repair and service [manufacturer's] motor vehicles."). However, compelled arbitration of a contract related to a motor vehicle franchise contract but not in and of itself a motor vehicle franchise contract is an issue of first impression in this District.

### A. ARE EXCLUSIVE USE AGREEMENT AND THE DEALER AGREEMENT SEPARATE AND INDEPENDENT CONTRACTS?

This Court must consider whether there exists one integrated contract or two separate and distinct contracts between the parties. As this Court sits in diversity, it must apply the relevant state law to these documents. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Here, the Exclusive Use Agreement contains no provisions regarding applicable law, and therefore, as the contract was entered into in the Commonwealth of Virginia, Virginia law applies. Dreher v. Budget Rent-A-Car Sys., Inc., 272 Va. 390, 395 (2006) ("the law of the place where the contract was formed applies when interpreting the contract and determining its nature and validity.") The Dealer Agreement does specify that the parties agreed any dispute should be governed by Michigan law, and as such Michigan law applies. Compl. Ex. A at 38; Settlement Funding, LLC v. Von Neumann-Lillie, 274 Va. 76, 80 (2007) ("If a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied."). As such, the court must attempt to harmonize the law of the two. However, as the independence of the Exclusive Use Agreement is in question, this Court primarily relies on Virginia law to determine whether the Exclusive Use Agreement integrates the Dealer Agreement.

Under both Virginia and Michigan law, when determining whether two agreements are separate and distinct or should be construed together, the Court may resort to extrinsic evidence regarding the circumstances surrounding the transaction to determine the intent of the parties. Am. Realty Trust v. Chase Manhattan Bank, N.A., 222 Va. 392, 403 (1981); Shirey v. Camden, 314 Mich. 128, 130. Generally, Virginia law dictates that where multiple documents were produced as part of the same transaction should be construed together. Countryside

8

Orthopaedics, P.C. v. Peyton, 261. Va. 142, 152 (2001) ("the [agreements] should be regarded as parts of one transaction and construed as one and the same instrument. We reach this conclusion because all of the parties knew about the agreements and executed them at the same time as part of a single transaction to accomplish an agreed purpose.") (internal citations omitted). However, "[u]ntil it appears that the several writings are part of a single transaction, either from the writings themselves or by extrinsic evidence, courts should not read the writings together as one contract because the same parties may have had more than one transaction in one day of the same general nature." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 626 (4th Cir. 1999) (citing Bailey v. Hannibal & St. Joseph R.R. Co., 84 U.S. 96, 108 (1872)).

The Exclusive Use Agreement was executed May 6, 1999 between Freedom Chevrolet Nissan, Inc. and General Motors. Compl. Ex. D. The Exclusive Use Agreement was then transferred to a successor in interest to Freedom Chevrolet, Tidewater Imports, on an undisclosed date. Finally, the Exclusive Use Agreement was assumed on April 3, 2001 by Hall Chevrolet as part of a larger agreement to take over all agreements between Tidewater Imports and GM after purchasing the dealership. Compl. Ex. E. The most recent Dealer Agreement between the plaintiff and defendant herein was executed October 7, 2010. Compl. Ex. A. This Court simply cannot assume that the Exclusive Use Agreement was part of the same "transaction" as the Dealer Agreement executed eleven years later. At the hearing, Hall Chevrolet made the argument that the Exclusive Use Agreement was an integrated element of the Dealer Agreement as the Dealer Agreement is merely a renewal of the previous contracts that were executed simultaneously to the Exclusive Use Agreement, and that when the Exclusive Use Agreement was executed it was a necessary element between Freedom and GM to enter into a Dealer Agreement. However, Hall Chevrolet provided no evidence of such a circumstance existing and

Hall Chevrolet purchased the dealership fully aware of the contracts and obligations existing, the Court is not convinced by this argument.

Although not part of the same transaction, the Dealer Agreement may be integrated by reference as the Exclusive Use Agreement makes multiple references to the existing Dealer Agreement and relies on the Dealer Agreement for some terms. Courts have favored the reading of such intertwined documents as part of a single contract. Hampton Roads Shipping Ass'n v. Int'l Longshoremen's Assn'n, 597 F. Supp. 709, 716 (E.D. Va. 1984) ("Where several writings are connected by internal references to each other, even if they were executed on different dates and were not among all of the same parties, they will constitute a single contract as long as they involve the same subject matter and prove to be parts of an entire transaction."); Daugherty v. Diment, 238 Va. 520, 524 (1989) ("Where a business transaction is based upon more than one document executed by the parties, the documents will be construed together to determine the intent of the parties; each document will be employed to ascertain the meaning intended to be expressed by the others."). However, a reference to another document does not automatically integrate the mentioned document. Instead, when considering such instances, the Court must consider the intent of the parties first: "Although contractual provisions may be subject to a rule of strict construction, the intention of the parties is the controlling factor. General rules of construction, therefore, should not be applied mechanistically, with the result that the intention of the contracting parties is thwarted. Furthermore, any interpretation adopted by the court must be reasonable and just." Am. Realty Trust v. Chase Manhattan Bank, N.A., 222 Va. 392, 403 (1981) (internal citations omitted).

Here, the parties clearly intended to enter into a separate contract with a substantial payment of money by GM to the dealer for the exclusive control of a piece of property. First, this

was a separately negotiated contract that was not determinative of the Dealer Agreement. GM has provided evidence that Exclusive Use Agreements are occasionally negotiated with select dealers, "GM often negotiates with its dealers in key locations to secure their commitment to provide exclusive facilities and locations in exchange for cash payments or other consideration." Aff. Of Andreau L. Ritter at 3; ECF No. 10. Second, separate consideration was paid by GM for the exclusivity of the lot. Compl. Ex. D at 2. Third, the exclusivity contract was for an entirely separate term of years than the Dealer Agreement which must be renegotiated frequently. Compl. Ex. A and D. Additionally, the Summary Agreement, executed on the same day as the Exclusive Use Agreement and reasonably interpreted to be part and parcel of the same integrated exclusivity contract of the Exclusive Use Agreement explicitly disclaims, "this agreement will survive the execution or modification of the Dealer Agreement, permitting Dealer to conduct Dealership Operations at the Property. Nothing Set forth in this Agreement shall be construed as amending, modifying or superseding the Dealer Agreement." Compl. Ex. B at 3. On the basis of these circumstances, this Court cannot reasonably interpret the Exclusive Use Agreement and the Dealer Agreement as one contract based on the intent of the parties.

This interpretation of the Court that there exist two independent contracts is supported by the strong federal policy in favor of arbitration. See Moses, 460 U.S. at 24-25.

### B. THE EXCLUSIVE USE AGREEMENT IS NOT A MOTOR VEHICLE FRANCHISE CONTRACT BY ITS OWN TERMS NOR DOES THE MVFCAFA APPLY BY POLICY

Facial review of the Exclusive Use Agreement reveals that it does not fit the narrow statutory definition of a motor vehicle franchise contract of "a contract under which a motor vehicle manufacturer, importer, or distributor sells motor vehicles to any other person for resale to an ultimate purchaser and authorizes such other person to repair and service the manufacturer's motor vehicles." 15 U.S.C. § 1226(a)(1)(B). As the Exclusive Use Agreement does not authorize

Hall Chevrolet to sell or repair motor vehicles, GM argues it simply does not fit into the class of contracts covered by the statute.

At the hearing, Hall Chevrolet argued that that despite the failure of the Exclusive Use Agreement to fit within the definition of motor vehicle franchise contract as defined by 15 U.S.C. § 1226(a)(1)(B), this Court should include the Exclusive Use Agreement to properly give effect to the policy evinced by the Automobile Dealers Day in Court Act (the "ADDCA"), of which the MVFCAFA is only one part. However, a court must "not resort to legislative history to cloud a statutory text that is clear." Ratzlaf v. United States, 510 U.S. 135, 147-48 (1994). Here, Congress explicitly limited those contracts which fell within the MVFCAFA to the definition contained within 15 U.S.C. § 1226(a)(1)(B) rather than the ADDCA's great definition of franchise as "the written agreement or contract between any automobile manufacturer engaged in commerce and any automobile dealer which purports to fix the legal rights and liabilities of any of the parties to such agreement or contract." 15 U.S.C. §1222. As such, this Court will not expand the definition of the MVFCAFA contrary to the clear statutory text.

### V. HALL CHEVROLET'S STATUTORY DEFENSES MUST BE SUBMITTED TO ARBITRATION

As the Court holds that the Exclusive Use Agreement is not subject to the MVFCAFA, all claims related to the Exclusive Use Agreement must be submitted to arbitration given the enforceable arbitration agreement. To the extent that Virginia statutory defenses may involve the Exclusive Use Agreement, the arbitration requirement of the Exclusive Use Agreement would and does require that it prevails over the hearing before the Virginia Department of Motor Vehicles in so far as the Exclusive Use Agreement is effected. "[W]hen parties agree to arbitrate all questions arising under a contract, the [Federal Arbitration Act ("FAA")] supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." Preston

v. Ferrer, 552 U.S. 346, 359–60 (2008). "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results," and this "objective would be 'frustrated' by requiring a dispute to be heard by an agency first." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S. Ct. 1740, 1749 (2011) (quoting Preston, 552 U.S. at 357–58). Thus, when questions of statutory rights are raised by a dispute covered by an arbitration agreement, the resolution of those questions is still a matter for the arbitrator. Mitsubishi, 473 U.S. at 628.

Hall Chevrolet does not lose any of its substantive rights by submission to an arbitrator, "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Id. at 628. As such, the Court **COMPELS** arbitration of the Exclusive Use Agreement and **STAYS** the pending proceeding before the Virginia Department of Motor Vehicles in so far as it may pertain to the exclusive use of the premises.

### VI. THE COURT RETAINS JURISDICTION OVER THE DEALER AGREEMENT CLAIM

Compelled arbitration of the Exclusive Use Agreement does bifurcate the present suit. This Court cannot compel arbitration of the Dealer Agreement claim without the written consent of both parties according to the MVFCAFA. While the separation of the two claims is not ideal, the Supreme Court has explicitly discussed that where there exist both arbitrable and non-arbitratable claims, the arbitrable claims must be submitted to arbitration pursuant to the Federal Arbitration Act and the strong public policy of enforcing arbitration clauses. KPMG LLP v. Cocchi, 132 S. Ct. 23, 24 (2011). Specifically, the Court considered the even where the submission of arbitrable would separate the dispute into multiple forums:

> The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. From this it follows that state and federal courts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration.

Id. (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985)). Accordingly, this Court cannot require arbitration of the dealer agreement and therefore retains jurisdiction over the Dealer Agreement Claim contained within Count II of the Complaint. Compl. at ¶¶ 53-61.

## VII. CONCLUSION

For the reasons discussed herein, the Court **GRANTS** GM's a Cross Motion to Compel Arbitration and Stay Proceedings. ECF No. 40. The parties are **ORDERED** to submit all Exclusive Use Agreement claims contained within Count I of the Complaint to Arbitration in accordance with the Exclusive Use Agreement. Compl. ¶¶ 43-52. The related proceeding before the Virginia Department of Motor Vehicles is hereby **STAYED** in so far as it may pertain to the exclusive use of the premises. As such, the Court herby **DENIES** Hall Chevrolet's Motion to Dismiss in Favor of an Alternative Forum. ECF No. 25.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
November 6, 2015